NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 26, 2014[*]
Decided December 2, 2014

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-1544

| | |
|---|---|
| RAYMOND LOVE,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>WAYNE SCAIFE, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:10-cv-0776-LJM-DML<br><br>Larry J. McKinney,<br>*Judge*. |

**O R D E R**

Raymond Love, an inmate at the Pendleton Correctional Facility in Indiana, claims in this action under 42 U.S.C. § 1983 that law library supervisors Wayne Scaife and Nova Guffey, case manager Vedora Hinshaw, and grievance officer Tim Nickles deprived him of his First Amendment right of access to the courts by denying him sufficient time in the prison's law library to complete his appellate brief in a state

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

post-conviction case. The district court granted summary judgment for the defendants. We affirm the judgment.

We recount the evidence and draw all reasonable inferences in the light most favorable to Love. *See Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). After his state criminal conviction had become final, Love filed a post-conviction motion claiming ineffective assistance of counsel, prosecutorial misconduct, and jury misconduct. The Marion Superior Court denied that motion in December 2007, and Love appealed. In March 2008 he received word that his appellate brief was due on April 5, 2008, and he notified Mr. Scaife in the library about this deadline. According to Love, inmates with filing deadlines typically are allowed four or five two-hour library passes each week. But Love never received more than two passes per week, even though he sent many requests to Mr. Scaife and several times asked Mr. Nickles for help getting more passes. The state appellate court granted a filing extension until May 19, 2008, but Love did not benefit because during all of April he received only six passes, one of them useless because of a library closure. And often when he did get a library pass he was limited to 90 minutes instead of the allotted 2 hours. An inmate who worked in the law library helped him with his brief for about two weeks, and then two other prisoners helped him collect paperwork and prepare for deadlines.

The situation did not change even after the state appellate court, in its order setting the May 19 deadline, instructed that prison administrators provide "access to resources that would allow the timely filing of documents necessary to the resolution of appeals." Love took this notice to Ms. Guffey, the new law library supervisor. He also sent her many requests and asked Mr. Nickles and Ms. Hinshaw for help getting more passes, but he received only two passes for the entire month.

Love then requested a second filing extension, and the state appellate court set the final deadline for June 13, 2008. Love took this notice to Ms. Guffey, but she gave him only four passes for the entire month, and because of library closures he was able to go only once. Love filed a formal grievance, which Mr. Nickles answered with a letter saying he had "proof" that Love had been given "ample time" to finish his appellate brief. Love also complained several times to Ms. Hinshaw, who tried to help but was told by Ms. Guffey that she had a backlog of requests for library passes. So before his June deadline, Love sent in the part of the brief he had finished and asked the appellate court for a third extension to complete the rest. The court denied his request and dismissed his appeal with prejudice for failure to timely file his brief.

In granting summary judgment for the defendants, the district court reasoned that a jury could not find from the evidence that Love was denied meaningful access to the law library or that he had potentially meritorious appellate claims. The former conclusion is questionable, but the latter is sound and also dispositive. (We note also that the district court could have dismissed at screening the claims against Ms. Hinshaw and Mr. Nickles, *see* 28 U.S.C. § 1915A, since prison administrators cannot be liable under § 1983 simply because they participated in addressing inmate grievances, *see Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). These defendants had no authority to grant or deny Love's requests for library passes, and, in fact, Ms. Hinshaw tried to *help* Love get more passes.)

Love argues that he presented enough evidence to prove he was denied adequate time in the law library to prepare his brief. Prisoners have a constitutional right to meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821, 823 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir. 2004). Prison authorities, therefore, must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. The defendants did not submit any of their own evidence in response to Love's claim, so the uncontroverted evidence is that prisoners with filing deadlines usually get four or five library passes per week. But in a span of 3 months, Love was allowed to go to the law library only 8 times. Thus Love had, at most, 16 hours to research and write his appellate brief. The defendants offered no explanation for denying Love more passes, despite his repeated requests. In fact, Ms. Guffey admitted that she had trouble reviewing and approving the accumulation of requests for library passes. We are not convinced that a jury would be unable to find that Mr. Scaife and Ms. Guffey denied Love access to the law library.

Nonetheless, Love's claim fails because he did not show that the lack of greater access caused him actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). Love went to great effort in trying to show that his access to the library was unduly restricted, but to establish an "actual injury" he needed evidence demonstrating as a consequence that he was prevented from pursuing a nonfrivolous, or potentially meritorious, legal action. *See Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009). Love argues that the inadequate access prevented him from completing his appellate brief on his post-conviction motion, which involved claims of ineffective assistance of counsel, prosecutorial misconduct, and jury misconduct. Although Love's general allegation of ineffective assistance satisfied the district court at screening, once the defendants had

moved for summary judgment, Love was compelled to present evidence that could convince a trier of fact that his post-conviction appeal raised arguable issues. *See Lewis*, 518 U.S. at 353, 357–58; *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 899 (7th Cir. 2002). But all Love said at summary judgment is that, during his criminal trial, his defense lawyer also was "on trial" for "taking client money and putting it in his account." On that basis, Love asserted, the lawyer's assistance must have been deficient because he could not properly focus on Love's case. Love did not elaborate on this sparse allegation (or even mention the factual predicate for his claims of prosecutorial misconduct or jury misconduct), and neither did he submit at summary judgment any of his post-conviction filings from the state litigation. *See Tarpley*, 312 F.3d at 899 (explaining that plaintiff cannot establish constitutional violation without evidence that defendants prevented him from pursuing nonfrivolous legal action). Thus, it is impossible to find that Love raised a nonfrivolous issue. *See Harbury*, 536 U.S. at 416 ("[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."). Accordingly, the district court properly granted summary judgment for the defendants.

AFFIRMED.